# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| AIR VENT, INC., § | |
| § | |
| Plaintiffs, § | |
| vs. § | CIVIL ACTION NO. |
| § | |
| POWERMAX ELECTRIC CO., LTD., § | |
| GUANGDONG § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S COMPLAINT

Plaintiff files this Complaint against Defendant Powermax Electric Co., Ltd., Guangdong and would respectfully show as follows:

## PARTIES

1. Plaintiff Air Vent, Inc. ("AVI") is a Delaware corporation with its principal place of business located at 4117 Pinnacle Point Drive, Suite 400, Dallas, Texas 75211.

2. Defendant Powermax Electric Co., Ltd., Guangdong is a foreign corporation based in China that designed, manufactured and/or otherwise placed the subject fan motor in the stream of commerce and purposefully availed itself of the rights and benefits of the State of Texas so that it would be reasonably foreseeable that it would be subject to the laws of the State of Texas relating to this product. Powermax Electric Co., Ltd., Guangdong's principal place of business is located at 1-2 Region, South of Quibao Industries, Xinhui District, Jiangmen City, Guangdong, China 529100. Powermax Electric Co., Ltd., Guangdong can be served through the Hague Convention.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that it is an action between citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Powermax Electric Co., Ltd., Guangdong because Plaintiffs' claims arise from Powermax Electric Co., Ltd., Guangdong:

- transacting business in the State of Texas;
- contracting to supply goods in the State of Texas; and/or
- causing tortious injury by an act or omission in the State of Texas.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## JURISDICTIONAL ALLEGATIONS

6. Plaintiff manufactures and sells powered attic ventilation products, some of which include ventilation fans powered by electric motors. All electric powered attic ventilation fans sold by Plaintiff include fan motors designed and manufactured by third parties. All third-party motor manufacturers design, manufacture and sell their motors to Plaintiff and other fan manufacturers. All fan motors included in Plaintiff's fans are purchased by Plaintiff from third-parties as completely assembled, ready-to-install units that comply with all UL requirements for manufacturing and safety.

7. Prior to the year 2000 and up thru the November 2012, Plaintiff purchased millions of electric fan motors from Powermax Electric Co., Ltd., Guangdong. From 2003-2012, Plaintiff purchased approximately Two Million Eight Hundred Seventy-Nine Thousand, Seven Hundred Thirty-Three (2,879,733) electric fan motors from Powermax Electric Co., Ltd., Guangdong. All

Powermax Electric Co., Ltd., Guangdong fan motors were designed, manufactured, marketed and sold by Powermax Electric Co., Ltd., Guangdong in Guangdong China and were shipped directly to Plaintiff from the Powermax Electric Co., Ltd., Guangdong facility in Guangdong, China.

8. As described more fully herein, Powermax Electric Co., Ltd., Guangdong motors were designed, manufactured, marketed, and sold to Plaintiff for inclusion in manufactured fan components and were intended for distribution throughout the United States. With the knowledge and agreement of Powermax Electric Co., Ltd., Guangdong and its agent/joint venture partners, Plaintiff incorporated Powermax Electric Co., Ltd., Guangdong electric motors in its completed fans which were distributed throughout the United States, from before 2003 thru at least the end of 2012.

9. All fan motors manufactured by Powermax Electric Co., Ltd., Guangdong for Plaintiff were purchased "in bulk" through the issuance of purchase orders to DM Asia ("DMA"), the marketing agent/partner for Powermax Electric Co., Ltd., Guangdong.  The purchase orders would have been sent to Powermax Electric Co., Ltd., Guangdong thru DMA for each and all of the 2,879,733 Powermax Electric Co., Ltd., Guangdong motors purchased in bulk by Plaintiff. These purchase orders are kept and maintained by Plaintiff.  All electric motors purchased by Plaintiff thru Purchase Orders to DMA were manufactured by Powermax Electric Co., Ltd., Guangdong at its Guangdong China facility, and were sent directly from Powermax Electric Co., Ltd., Guangdong in Guangdong China thru ports in California, Florida, Virginia and Texas for final delivery to Plaintiff.  DMA is not a manufacturer and has no manufacturing facility.  Instead, according to Peter Cheung (DMA's sales representative for Powermax Electric Co., Ltd., Guangdong) and the Underwriters Laboratory Follow-Up Service Procedure (a UL document provided by DMA to Plaintiff), Powermax Electric Co., Ltd., Guangdong is the sole manufacturing

facility for all electric motors sold by or thru DMA. DMA acted as Powermax Electric Co., Ltd., Guangdong's U.S. distributor, and Powermax Electric Co., Ltd., Guangdong did nothing to limit the sale of its fan motors or to prevent them from being sold in Texas, the second most populous state in the U.S.

10. UL certification is a specific requirement by the National Electrical Code in the United States. A UL certification means the product meets United States equipment condition requirements and OSHA standards for US applications.

11. From 2003 thru 2011, Powermax Electric Co., Ltd., Guangdong periodically sent invoices directly to Plaintiffs for fan motors manufactured by Powermax Electric Co., Ltd., Guangdong. At least 91,354 Powermax Electric Co., Ltd., Guangdong fan motors were invoiced directly from Powermax Electric Co., Ltd., Guangdong to Plaintiff. Powermax Electric Co., Ltd., Guangdong invoices to Plaintiff show bulk shipments of Powermax Electric Co., Ltd., Guangdong motors shipped directly to Dallas Texas, for the years 2003, 2004, 2005, 2007 and 2011. Other Powermax Electric Co., Ltd., Guangdong fan motors were sometimes invoiced by DMA. All Powermax Electric Co., Ltd., Guangdong manufactured motors, regardless of whether they were invoiced to Plaintiff by Powermax Electric Co., Ltd., Guangdong or DMA, were shipped directly from the Powermax Electric Co., Ltd., Guangdong manufacturing facility in Guangdong China to Plaintiff's facilities in Dallas, Texas and were intended for sale and distribution throughout the United States. Although Powermax Electric Co., Ltd., Guangdong alleges that title to the Powermax Electric Co., Ltd., Guangdong motors invoiced through DMA passed to DMA in China, DMA never took physical possession of those motors. Instead, the motors were shipped directly from the Powermax Electric Co., Ltd., Guangdong manufacturing facility in Guangdong China to Plaintiff's facilities in Dallas.

12. Each and every purchase order issued by Plaintiff to purchase Powermax Electric Co., Ltd., Guangdong motors contained "Purchase Order Terms and Conditions" (hereinafter sometimes "POTCs"). During the years Plaintiff purchased motors from Powermax Electric Co., Ltd., Guangdong, Plaintiff was aware of two (2) forms of POTCs issued by Plaintiff that have substantially similar language as it concerns the product quality and indemnity provisions.

13. Through the POTCs, the Supplier (in this case Powermax Electric Co., Ltd., Guangdong) agreed to accept and ship all manufactured goods (specifically electric fan motors) pursuant to terms stated in the purchase orders and the POTCs. Pursuant to the POTCs, the Supplier (in this case Powermax Electric Co., Ltd., Guangdong) warrantied, among other things, that all goods shipped pursuant to the purchase orders would conform to the motor specifications, drawings and samples provided to Plaintiff; be free from defects in design, material and workmanship; be of merchantable quality and be suitable for use for the particular purposes intended; and would bear all warnings, labels and markings required by applicable laws and regulations. Pursuant to the POTCs, the Supplier (in this case Powermax Electric Co., Ltd., Guangdong) agreed to indemnify, defend and hold harmless Plaintiff and their affiliates from and against all claims, demands, causes of action, losses, costs and expenses (including without limitation reasonable attorneys' fees and costs of defense) arising out of or incident to the motor manufacturer's performance under the purchase orders. The Supplier (in this case Powermax Electric Co., Ltd., Guangdong) also agreed that all agreements and representations in the POTCs, including specifically those regarding indemnification and warranties, shall survive delivery and final payment; agreed to and expressly waived any rights the manufacturer might have to assert any immunities or defenses to the indemnity agreement, and agreed that all rights and remedies

available to Plaintiff pursuant to the POTCs are in addition to and not in limitation of any rights and remedies otherwise available to Plaintiff at law or in equity

14. In about 2012, representatives from DMA and Powermax Electric Co., Ltd., Guangdong met with Plaintiff's representatives (Tracy Straughan and John Wagner) at the Powermax Electric Co., Ltd., Guangdong manufacturing facility in Guangdong China in order to give them a tour of the manufacturing facility where all motors sold to Plaintiff from Powermax Electric Co., Ltd., Guangdong were being manufactured. Plaintiff's representatives explained that AVI was based in Dallas, Texas, that they were large purchasers of Powermax Electric Co., Ltd., Guangdong fan motors and that they incorporated those fan motors into their attic fans sold throughout the United States. Plaintiff's representatives were taken to a manufacturing facility named Powermax Electric Co., Ltd., Guangdong in Guangdong China, where they observed motors coming off the production line that were being shipped and sold to AVI. Representatives from DMA and Powermax Electric Co., Ltd., Guangdong again confirmed that all motors purchased by Plaintiff were manufactured by Powermax Electric Co., Ltd., Guangdong at the Guangdong China facility and were being shipped directly from Powermax Electric Co., Ltd., Guangdong to Plaintiff in Dallas, Texas.

15. Between 2005 and 2014, a representative of Plaintiff attended product inspections of Powermax Electric Co., Ltd., Guangdong manufactured motors along with representatives from Powermax Electric Co., Ltd., Guangdong. These inspections took place in various places in the State of Texas.

16. AVI has been involved in litigation with DMA with regard to the failure of Powermax Electric Co., Ltd., Guangdong manufactured motors. In some of those cases, discovery has been exchanged. Peter Cheung, the DMA representative in those cases, has offered

verification/affidavits in those cases confirming that all fan motors purchased thru POs issued to DMA were manufactured, sold and shipped from Powermax Electric Co., Ltd., Guangdong directly to Plaintiff. Peter Cheung confirmed that all (2,879,733) Powermax Electric Co., Ltd., Guangdong motors sold thru DMA to Plaintiff were manufactured by Powermax Electric Co., Ltd., Guangdong and were shipped directly from the Powermax Electric Co., Ltd., Guangdong manufacturing facility to Plaintiff in Dallas, Texas.

17. There are "Mainstays" brand ceiling fans available for purchase at the Walmart in Rockwall, Texas and in Houston, Harris County, Texas. According to the packaging and carton, Powermax Electric Co., Ltd., Guangdong is the manufacturer for these products sold to and through Walmart and it appears the products were shipped directly from Powermax Electric Co., Ltd., Guangdong to Walmart. There are also "Hampton Bay" brand ceiling fans available for purchase at a Home Depot in Rockwall, Texas. According to the carton and the packaging, Powermax Electric Co., Ltd., Guangdong is the manufacturer for these products sold to and thru Home Depot and the products are shipped directly from Powermax Electric Co., Ltd., Guangdong to Home Depot or one of its trade partners. All of the ceiling fans designed, manufactured, marketed and sold by Powermax Electric Co., Ltd., Guangdong through Home Depot locations in Texas contain a fan motor designed, manufactured, marketed and sold by Powermax Electric Co., Ltd., Guangdong.

18. According to the insurance certificates issued by AIG Insurance Company of China and Chartis Insurance Company, the Powermax Electric Co., Ltd., Guangdong manufactured roof ventilators and fan motors have coverage for products sold "Worldwide, except Syria, Burma (Myanmar), Cuba, Iran and Sudan." The Chartis policies covering Powermax Electric Co., Ltd., Guangdong products include coverage for products sold "Worldwide Including

USA/Canada/U.K." The AIG and Chartis policies also include Product Indemnification Agreements between Powermax Electric Co., Ltd., Guangdong and the "additional insured" Powermax Electric Co., Ltd., Guangdong was required to add to its insurance policies.

19. Powermax Electric Co., Ltd., Guangdong has sought to improperly use its American business model as a shield. Powermax Electric Co., Ltd., Guangdong deliberately, not fortuitously, directs its products into the stream of commerce through its distribution channel to the entire United States, including Texas. Powermax Electric Co., Ltd., Guangdong was aware, and intended, that its motors would be sold to consumers throughout the United States, including Texas. Powermax Electric Co., Ltd., Guangdong delivered its fan motors into the stream of commerce with the expectation that they would be purchased by or used by consumers in Texas. Powermax Electric Co., Ltd., Guangdong used DM Asia as its U.S. distributor and did nothing to limit the sale of its motors or prevent them from being sold in Texas, the second most populous state. Powermax Electric Co., Ltd., Guangdong complied with all Underwriters Laboratory requirements for fan motors to be sold in the U.S. Powermax Electric Co., Ltd., Guangdong received substantial revenue from the sale of its motors to consumers in Texas. Simply put, Powermax Electric Co., Ltd., Guangdong targeted Texas, was aware its products would reach consumers in Texas and purposefully availed itself of the privilege of doing business in Texas with Texas consumers.

## FACTS COMMON TO ALL CAUSES OF ACTION

20. Plaintiff is a manufacturer and seller of attic ventilation products. Some of the products sold by Plaintiff include powered attic ventilation fans. All powered attic ventilation fans sold by Plaintiff include completed fan motors manufactured by third parties. Third-party motor manufacturers design, manufacture and sell their motors to Plaintiff as completed units. All fan

motors included in Plaintiff's fans are purchased by Plaintiff as completely assembled, ready to install units.

21. Plaintiff does not manufacture any motorized, energized or powered component in their fan assemblies that are capable of failing in a way that could possibly be an ignition source for, or the cause of, a fire. Plaintiff's completed products were and are approved by Underwriters Laboratories ("UL") and comply with all UL safety standards.

22. In 2024, State Farm General Insurance Company ("State Farm" filed a complaint in the Supe4rior Court of Los Angeles County, California (the "Motter Lawsuit") as subrogee of its insureds. The Motter Lawsuit alleged that the home of State Farm's insureds, the Motters, sustained damages from a fire caused by an attic fan (the "Subject Fan") sold by Plaintiffs. If that is true, the only possible reason would be a defect in the Powermax Electric Co., Ltd., Guangdong Fan Motor (the "Fan Motor") manufactured and shipped by Powermax Electric Co., Ltd., Guangdong, which was incorporated without modification into the subject Attic Fan.

23. Plaintiff did not design or participate in the design of the Fan Motor. Rather, the Fan Motor was manufactured by Powermax Electric Co., Ltd., Guangdong and was sold to Plaintiff by Powermax Electric Co., Ltd., Guangdong, KOF and/or DMA and then shipped directly from Powermax Electric Co., Ltd., Guangdong to Plaintiff in Dallas, Texas for incorporation into the Subject Fan.

24. Plaintiff did not in any way change, modify, or alter the Fan Motor. Plaintiff installed the Fan Motor at issue into its fan housing in good and workmanlike manner by attaching the motor to the housing. Nothing Plaintiff did or did not do could have contributed in any way to a failure of the Fan Motor or the fire that was the subject of the Motter Lawsuit.

25. AVI brought suit against Powermax in the Motter Lawsuit. After being served, Powermax specially appeared and moved to quash the service of summons due to a lack of personal jurisdiction. By order dated February 10, 2025, the California state court granted the motion and dismissed the case.

## CAUSES OF ACTION

### First Cause of Action: Statutory Indemnity

26. Plaintiff incorporates the allegations of paragraphs 1 through 27 above as if fully set forth herein.

27. Pursuant to Chapter 82, *et. seq.* of the Texas Civil Practice and Remedies Code, Powermax Electric Co., Ltd., Guangdong is a "manufacturer" of the Fan Motor that is alleged to be defective. Plaintiff was and are innocent sellers of the Fan Motor. As such, Powermax Electric Co., Ltd., Guangdong has an independent duty to indemnify and hold harmless Plaintiff from and against the claims asserted in the Motter Lawsuit. Under Chapter 82, Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff for its court costs, reasonable expenses, reasonable attorneys' fees and reasonable damages in defending the Motter Lawsuit, including the payment of any amount necessary to resolve the claims brought therein. Plaintiff hereby sues Powermax Electric Co., Ltd., Guangdong for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and pre-judgment and post-judgment interest at the applicable rate.

### Second Cause of Action: Contractual Indemnity

28. Plaintiff incorporates the allegations of paragraphs 1 through 27 above as if fully set forth herein.

29. All fan motors purchased by Plaintiff from Powermax Electric Co., Ltd., Guangdong, including the subject Fan Motor, were purchased through the issuance of formal Purchase Orders ("PO's") which contained Purchase Order Terms and Conditions ("POTC") that

were included with and made a part of each Purchase Order. Each shipment of motors Plaintiff received was accompanied by DMA's "confirmations" which referenced the separately numbered PO's with the POTC attached.

30. Pursuant to the Uniform Commercial Code ("UCC"), the POTC are a binding and enforceable part of the transaction between Plaintiff and Powermax Electric Co., Ltd., Guangdong. The Purchase Order Terms and Conditions state, in part:

> 12. INDEMNIFICATION. To the fullest extent permitted by law, Seller agrees to indemnify, defend, and hold harmless Buyer, its affiliates, and their respective directors, officers, employees and agents (the "Indemnified Parties") from and against all claims, demands, causes of action, losses, costs and expenses (including without limitation reasonable attorneys' fees and costs of defense) (collectively, "Losses") arising out of or incident to Seller's performance hereunder, or the presence of Seller, its employees, agents or invitees ("Seller Parties") on Buyer's premises, provided that such Losses are attributable to (a) the negligence or willful misconduct of the Seller Parties, (b) the failure of the Seller Parties to comply with applicable laws, or (c) bodily injury, sickness, disease or death (including but not limited to bodily injury, sickness, disease or death of the employees of Seller or Buyer), or to damage to or destruction of tangible property (including the loss of use thereof); in each case regardless of whether or not caused in part by the negligence or other fault of any Indemnified Party hereunder; provided that Seller shall not be liable for Losses caused by the sole negligence or willful misconduct of any Indemnified Party.

31. Also, pursuant to the Purchase Order Terms and Conditions, Powermax Electric Co., Ltd., Guangdong provided certain express warranties:

> 9. Seller's Warranties. Seller expressly warrants that for a period of one year after Buyer's acceptance of the goods or services hereunder, or for such longer period as may be expressly provided in this Purchase Order or under applicable law, all goods and services covered by this Purchase Order will: (a) strictly conform to Seller's specifications, drawings, samples and other written materials and descriptions, or, to the extent the goods were purchased to Buyer's specifications and drawings as set forth or referred to in this Purchase Order, that the goods strictly conform with those specifications and drawings; (b) be free from defects in

design, material and workmanship; (c) be of merchantable quality and suitable for the particular purposes intended, whether express or reasonably implied; and (d) bear all warnings, labels, and markings required by applicable laws and regulations. In addition, Seller warrants that: (e) none of the goods covered hereby, to the extent they are subject to laws prohibiting adulteration or misbranding, is adulterated or misbranded within the meaning of such laws as of the date of delivery to Buyer; (f) all goods covered hereby may be introduced into interstate commerce without violation of applicable laws and regulations; (g) all services have been performed in a good and workmanlike manner; and (h) all goods and services furnished or rendered pursuant to this Purchase Order have been produced, sold, delivered or rendered to Buyer in compliance with all applicable laws and regulations, including those set forth in Section 14.

32. Powermax Electric Co., Ltd., Guangdong is obligated to defend and indemnify Plaintiff pursuant to the POTC.  Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff for its court costs, reasonable expenses, reasonable attorneys' fees and reasonable damages in defending the Motter Lawsuit, including the payment of any amount necessary to resolve the claims brought therein.  Plaintiff hereby sues Powermax Electric Co., Ltd., Guangdong for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

### Third Cause of Action: Common Law Indemnity

33. Plaintiff incorporates the allegations of paragraphs 1 through 27 above as if fully set forth herein.

34. Pursuant to Texas law, a party who may bear liability to a third person arising only out of passive actions by the party may seek indemnification from an active tortfeasor.  Under the present facts, Plaintiff's potential liability in the Motter Lawsuit arose only as the passive statutory seller of the Fan Motor which was incorporated, without modification, into the subject Attic Fan.  Under Texas law, the active party at fault (Powermax Electric Co., Ltd., Guangdong) must

indemnify Plaintiff, as they were an innocent retailer/seller of the component part that allegedly caused harm to the Plaintiffs in the Motter Lawsuit.

35. Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff under Texas common law for Plaintiffs' court costs, reasonable expenses, reasonable attorneys' fees and reasonable damages in defending the Motter Lawsuit, including the payment of any amount necessary to resolve the claims brought therein. Plaintiff hereby sues Powermax Electric Co., Ltd., Guangdong for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

### Fourth Cause of Action: Breach of Contract

36. Plaintiff incorporates the allegations of paragraphs 1 through 27 above as if fully set forth herein.

37. The PO's, POTC and PO confirmations between and among Plaintiff and DMA, as the agent, representative and joint venturer with Powermax Electric Co., Ltd., Guangdong, created valid contracts for the sale of goods. The Motter Plaintiffs alleged that the Subject Fan caused the fire in question. If that is true, the only possible reason would be a defect in the Fan Motor manufactured and shipped by Powermax Electric Co., Ltd., Guangdong, which was incorporated without modification into the subject Attic Fan. If the Fan Motor was defective, it was not in compliance with the contractual obligations owed to Plaintiff by Powermax Electric Co., Ltd., Guangdong. Under the present facts, and based on the allegations in the Motter Lawsuit, Powermax Electric Co., Ltd., Guangdong breached their contractual obligations to Plaintiff, causing damage to Plaintiff.

38. Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff for Plaintiff's court costs, reasonable expenses, reasonable attorneys' fees and reasonable damages in defending the

Motter Lawsuit, including the payment of any amount necessary to resolve the claims brought therein. Plaintiff hereby sues Powermax Electric Co., Ltd., Guangdong for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

### Fifth Cause of Action: Breach of Implied Warranty

39. Plaintiff incorporates the allegations of paragraphs 1 through 27 above as if fully set forth herein.

40. Powermax Electric Co., Ltd., Guangdong is a seller of goods and is known to be a manufacturer and seller of fan motors within the industry. The fan motors manufactured by Powermax Electric Co., Ltd., Guangdong and sold to Plaintiff constitute goods as defined and contemplated in the Uniform Commercial Code.

41. Pursuant to Texas law, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. The Motter Plaintiffs alleged that the subject Fan Motor caused the fire in question. If that is true, the only possible reason would be a defect in the Fan Motor manufactured and shipped by Powermax Electric Co., Ltd., Guangdong, which was incorporated without modification into the subject Attic Fan. If the Fan Motor was defective, it was not of merchantable quality. Based on the allegations in the Motter Lawsuit, Plaintiff has suffered actual damages for which they now sue.

42. Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff for its court costs, reasonable expenses, reasonable attorneys' fees and reasonable damages in defending the Motter Lawsuit, including the payment of any amount necessary to resolve the claims brought therein. Plaintiff hereby sues Powermax Electric Co., Ltd., Guangdong for these amounts as well as all

attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

### Sixth Cause of Action: Negligence and Strict Liability

43. Plaintiff incorporates the allegations of paragraphs 1 through 27 above as if fully set forth herein.

44. Powermax Electric Co., Ltd., Guangdong designed, manufactured, and sold the subject fan motor to Plaintiff. The Motter Plaintiffs alleged that the Subject Fan caused the fire in question. If that is true, the only possible reason would be a defect in the Fan Motor manufactured and shipped by Powermax Electric Co., Ltd., Guangdong, which was incorporated without modification into the subject Attic Fan. If the Fan Motor was defective and caused the fire that is the subject of the Motter Lawsuit, then Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff under principles of negligence and strict liability for the damages caused by the defective Fan Motor, the resulting fire and the subsequent Motter Lawsuit.

45. If the Fan Motor was defective and caused the fire that is the subject of the Motter Lawsuit, Powermax Electric Co., Ltd., Guangdong is liable for the negligent sale, distribution, supply or provision of a defective product which directly and proximately caused injury, harm, and/or damage to Plaintiff. If the Fan Motor was defective and caused the fire that is the subject of the Motter Lawsuit, Powermax Electric Co., Ltd., Guangdong is also liable to Plaintiff because they negligently failed to take all steps reasonably necessary to prevent harm and/or damage from occurring to Plaintiff. If the Fan Motor was defective and caused the fire that is the subject of the Motter Lawsuit, Powermax Electric Co., Ltd., Guangdong is liable for negligently selling, distributing, supplying or otherwise providing a defective product to Plaintiff.

46.  As a result of its strict liability and negligence, Powermax Electric Co., Ltd., Guangdong is liable to Plaintiff for their court costs, reasonable expenses, reasonable attorneys' fees and reasonable damages in defending the Motter Lawsuit, including the payment of any amount necessary to resolve the claims brought therein.  Plaintiff hereby sues Powermax Electric Co., Ltd., Guangdong for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

## ATTORNEYS' FEES

47.  Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE sections 38.001 *et al*.

## DAMAGES

48.  As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered damages including:

- Attorneys' fees, costs and expenses incurred in defending the Motter Lawsuit; and
- Attorneys' fees, costs and expenses incurred in prosecuting the instant suit.

Plaintiff seeks an award of these damages, and all future damages, as well as pre-judgment and post-judgment interest at the applicable rate.

## STATUE OF LIMITATIONS

49.  AVI pleads the discovery rule, fraudulent concealment and all other doctrines which would delay or toll the running of the statute of limitations.

## CONDITIONS PRECEDENT

50.  All conditions precedent to Plaintiff's recovery for the causes of action stated herein have occurred, have been performed or have been excused.

## JURY DEMAND

51. Plaintiff hereby requests a trial by jury.

## CONCLUSION AND PRAYER

Plaintiff prays that Defendant be cited to answer and appear and that, following a trial by jury, they be awarded the following:

a. Judgment against Defendant for the actual damages sought above;

b. Attorneys' fees and court costs;

c. Pre- and post-judgment interest; and

d. All other relief to which they are justly entitled.

Respectfully submitted,

*/s/ Eric D. Pearson*
Eric D. Pearson
State Bar No. 15690472
eric@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 N. State Highway 161
Suite 450
Irving, Texas 75038
(214) 237-9001 Telephone
(214) 237-9002 Facsimile

**ATTORNEYS FOR PLAINTIFF**